IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT BENTLEY MARLOW | ) |
| | ) |
| v. | )   No. 3:12-0646 |
| | )   Judge Sharp/Bryant |
| THE TENNESSEE SUPREME COURT, ET AL. | ) |

To:     The Honorable Kevin Sharp, District Judge

## REPORT AND RECOMMENDATION

By order of the District Judge entered August 17, 2012 (Docket Entry No. 8), this matter was referred to the undersigned for management of the case and consideration of all pretrial motions, as well as for consideration of whether any appeal by plaintiff Marlow (who proceeds *pro se* and *in forma pauperis*) from any Report and Recommendation of the undersigned, if adopted by the Court, should be certified as taken in good faith under 28 U.S.C. § 1915(a).

Currently pending in this case are motions to dismiss the pro se plaintiff's amended complaint, filed by defendant National Conference of Bar Examiners ("NCBE") (Docket Entry No. 39), and by defendants Clark, Holder, Koch, Lee, Wade, Anderson, Miller, Bibb, McGinness, Jr., Moses, Wilkens, Gatrell, Rice, Copeland and Watts (collectively, "State defendants") (Docket Entry No. 41).  For the reasons given below, the Magistrate Judge recommends that these motions be GRANTED and that this case be DISMISSED.  It is further recommended that any appeal from this recommendation, if adopted by the Court, be certified as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

## I. Background

This civil rights case, filed pursuant to 42 U.S.C. § 1983, arose from plaintiff Marlow's unsuccessful attempt to gain admission to the Bar of the State of Tennessee, after succeeding in passing the Bar examination, because of his failure to meet the character and fitness requirements for admission to the Bar. Plaintiff essentially alleges that the State defendants, aided and abetted by the NCBE, engaged in procedural improprieties which were designed to obfuscate a process already unlawfully shrouded in secrecy and subject to almost unlimited discretion of the decisionmakers, pursuant to their power to deny bar admission on the basis of the moral character and fitness of applicants such as plaintiff, and in violation of the due process rights of such applicants. See Docket Entry No. 1.[1] Plaintiff initially sought $5,000,000.00 in compensatory and punitive damages, as well as declaratory and injunctive relief. Id. at 28-30.

In the Court's screening of plaintiff's original complaint pursuant to 28 U.S.C. § 1915, the Court found as follows:

> [T]he plaintiff's claims **for damages** against [the State defendants and Tennessee Attorney General Robert E. Cooper, Jr.] in their official capacities, as well as the plaintiff's claims **for damages** against defendants Tennessee Supreme Court, The Tennessee Board of Law Examiners, and the Tennessee Lawyers Assistance Program fail to state claims upon which relief can be granted. Accordingly, these claims are hereby DISMISSED WITH PREJUDICE.
>
> However, as to the plaintiff's remaining claims, the plaintiff has stated a colorable due process claim under 42 U.S.C. § 1983.

---

[1]The full procedural history of plaintiff's application for admission to the Bar is contained in the February 23, 2012 Order of the Tennessee Supreme Court on petition for review of the denial of that application, attached to plaintiff's complaint. (Docket Entry No. 1-1)

(Docket Entry No. 8 at 2) (emphasis in original)  The Court further explained its finding of a nonfrivolous claim in plaintiff's "alleg[ing], in multiple counts of the complaint, that the defendants acted in violation of the plaintiff's Due Process rights 'not in any capacity as adjudicators or litigators but rather in a concerted effort to protect the unconstitutional secrecy and virtually unlimited discretion each Defendant enjoys in the regulation of the practice of law[.]'"  (Docket Entry No. 7 at 4)

In view of these findings, and after the filing of motions to dismiss the remaining claims of the original complaint, plaintiff filed an amended complaint on November 15, 2012.  (Docket Entry No. 38)  With his amended complaint, plaintiff has now abandoned all claims to monetary relief, and seeks, inter alia, entry of "an Order declaring the processes, procedures, rules and regulations employed in the determination of character and fitness of applicants seeking licensure to practice law in Tennessee unconstitutional." (Docket Entry No. 38 at 7)  Plaintiff further explains, in footnotes to his amended request for declaratory relief, as follows:

> Plaintiff is challenging the constitutionality of the processes, procedures, rules, and regulations employed in the determination of character and fitness of applicants seeking licensure to practice law in Tennessee, rather he is seeking prospective injunctive relief, concerning ripeness, the Plaintiff is taking efforts to seek reapplication, (See *In Re: Robert Bentley Marlow*, Tenn. Sup. Ct. Docket No. M2011-01789-SC-WR-BL, emergency motion filed 12 October seeking clarification of re-application procedure; Order directing Tennessee [Board of Law Examiners] to answer entered 1 November 2012), and therefore should not be barred by the *Rooker-Feldman* doctrine nor for lack of ripeness. See *Dubuc v. Michigan Board of Law Examiners*, 342 F.3d 610 at 617 (6th Cir. 2003).
>
> The Plaintiff is **NOT** challenging the decision of any defendant regarding his application to practice law in Tennessee in this suit.  The Plaintiff challenged the decision by Petition of *Writ of Certiorari* to the United States Supreme

> Court, Docket No. 11-10856. Cert. denied 1 October 2012; Petition for Rehearing filed 26 October 2012; Scheduled for Conference 20 November 2012; Order on Rehearing expected 26 November 2012. And the Plaintiff shall respect the outcome of those proceedings regarding the appropriateness of the Tennessee Supreme Court and/or Tennessee Board of Law Examiner's decisions without further comment or litigation.

Id. at 7 nn. 7, 8.

## II. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although FED. R. CIV. P. 8(a)(2) requires merely "a short and plain statement of the claim," the plaintiff must allege enough facts to make the claim plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). However, if a claim "is so verbose that the Court cannot identify with clarity the claim(s) of the pleader and adjudicate such claim(s) understandably on the merits," it violates FED. R. CIV. P. 8. Harrell v. Dirs. of Bur. Of Narcotics & Dangerous Drugs, 70 F.R.D. 444 (E.D. Tenn. 1975). See also Plymale v. Freeman,, 1991 WL 54882 (6th Cir. Apr. 12, 1991). The Plaintiff must plead well enough to ensure that his or her complaint is more than "a formulaic recitation of the elements of a cause of action." Twombly. 550 U.S at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). Nevertheless, this Court need not accept legal conclusions or unwarranted factual inferences as true, Iqbal, 556 U.S. at 677-78; Morgan v.

4

Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987), and a complaint containing mere legal conclusions alone will "not unlock the doors of discovery for a plaintiff." Iqbal, 556 U.S. at 678. While a pro se complaint is to be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardue, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), "basic pleading essentials" must still be met. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

### III. Discussion of the Motions

A. Motion of the State Defendants

Before turning to the arguments for dismissal of the claims against the State defendants, the undersigned will address some misconceptions about the posture of the case against these defendants, revealed by footnotes to their legal arguments in support of their motions to dismiss the original and amended complaint. First, the State defendants mistakenly note that "[t]his Court previously dismissed all of [them] in their official capacities" (Docket Entry Nos. 32 & 42, n.1 (citing Docket Entry No. 8)), when in fact the Court emphasized that its order of dismissal applied only to plaintiff's claims *for damages* against the State defendants in their official capacities. (Docket Entry No. 8 at 2) Second, the State defendants argue that plaintiff's requested relief of attorney's fees is without merit because "[a] pro se plaintiff-attorney is not entitled to attorney's fees under 42 U.S.C. § 1988" (Docket Entry Nos. 32 & 42 at 2 n.2); however, it is clear that plaintiff requested such an award not for himself, but only "if counsel becomes necessary to effectively litigate [his] claims . . . ." (Docket Entry No. 1 at 29, ¶ H) Finally, the State defendants argue that plaintiff's claims against them for declaratory and injunctive relief are barred by the

Eleventh Amendment, noting that "[a] suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." (Docket Entry No. 32 at 14 n.8 (quoting Pennhurst State Schools & Hosp. v. Halderman, 465 U.S. 89, 102 (1984)) However, the State defendants fail to recognize (as the Pennhurst Court did, 465 U.S. at 102-03) the Ex parte Young exception to this general rule, pursuant to which "official-capacity actions for prospective relief are not treated as actions against the State." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)); Ex parte Young, 209 U.S. 123 (1908).

The State defendants, in their memoranda in support of both their motion to dismiss the original complaint (Docket Entry No. 32) and their motion to dismiss that complaint as amended (Docket Entry No. 42), argue that plaintiff's claims for declaratory and injunctive relief are barred by the Rooker-Feldman doctrine. In the latter memorandum, the State defendants present the Rooker-Feldman argument as an alternative ground for dismissal, following an initial argument that plaintiff lacks standing to pursue his claims for declaratory and injunctive relief. As explained below, plaintiff's claims do not fail for lack of standing, or for lack of jurisdiction under Rooker-Feldman, but for lack of ripeness.

The State defendants argue that, because "the Plaintiff is not currently seeking admission to the Tennessee Bar," the declaratory relief he seeks will not serve to prevent any injury in the future, other than a hypothetical one. Therefore, the State defendants assert that plaintiff's claims seek prospective relief for past injuries, and so do not present a live case or controversy sufficient to bestow standing. (Docket Entry No. 42 at 4-5 (citing Grendell v. Ohio Sup. Ct., 252 F.3d 828, 832 (6th Cir. 2001)) However, this is not a case where "the threat of repeated injury is speculative or tenuous," as it was in Grendell. Id. at 833. Rather

than being dependent on the unlikely repetition of an attenuated chain of events, see id., a palpable threat of future injury is evident in this case, given the immutable nature of plaintiff's prior record bearing on his character and fitness to practice law and his demonstrated efforts to seek guidance on how to re-apply for admission to the Bar of Tennessee. Plaintiff has therefore demonstrated that he is subject to "a significant possibility of future harm," as required to establish standing to seek declaratory and injunctive relief. Id. (quoting Nat'l Rifle Assoc. of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997))

Moreover, the State defendants alternative argument that the Rooker-Feldman doctrine applies here to deprive the district court of subject-matter jurisdiction is based on a misreading of the law. The gist of this argument is that, although plaintiff maintains he is no longer challenging the final decision on his prior application to the Bar, the prospective relief he seeks would require a finding that the procedures utilized to inform that prior decision were unconstitutional, and thus would necessarily imply the invalidity of the Tennessee Supreme Court's judgment affirming the denial of plaintiff's Bar application. The State defendants cite the very similar factual scenario considered in Lawrence v. Welch, 531 F.3d 364 (6th Cir. 2008), in particular the section of that opinion which found Rooker-Feldman applicable "because the prospective relief sought by Lawrence can be predic[a]ted only on a determination that the prior decision denying him bar admission was improper[.]" Id. at 372. The opinion further explained this finding thusly:

> [T]he district court could not have concluded that Lawrence was entitled to the prospective relief he seeks - that is, an order enjoining defendants from doing what they did before - without first finding that defendant's previous decision was unconstitutional. Put another way, while the redress Lawrence seeks in his second cause of action is forward-looking, the claim is nonetheless premised on the same past injury: the allegedly unlawful reasoning used to

7

deny him bar admission in 2006.

Id. at 370-71. The State defendants argue that these considerations control in this case, requiring this Court to, consistent with Lawrence, dismiss the amended complaint against them based on Rooker-Feldman.

However, as mentioned above, the State defendants' argument is misplaced, as it is based on a misreading of Lawrence ascribing controlling weight to what is actually the minority opinion on this issue. They are not the only litigants to make this mistake, owing to the confusing structure of the Lawrence opinion, but the fact remains that the section applying Rooker-Feldman to Lawrence's claims for injunctive relief is the opinion of only District Judge Bertelsman, who otherwise wrote for the majority in that case but whose opinion on the issue was outweighed by Judge Sutton's concurrence, which Judge Rogers joined. See Berry v. Schmitt, 688 F.3d 290, 301 & n.3 (6th Cir. 2012). In that concurrence, which is the majority opinion and the law of the circuit with regard to the issue of prospective relief under these circumstances, the court finds that the claim is subject to dismissal not under Rooker-Feldman, but on ripeness grounds.

Bearing close affinity to the question of standing, ripeness describes the extent to which "the harm asserted has matured sufficiently to warrant judicial intervention[.]" Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975). "Basically, the question in each case is whether . . . there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Just as in Lawrence, the undersigned finds that the circumstances in the case at bar require a finding that the instant case is not ripe for decision. To be sure, plaintiff has

8

demonstrated his interest in filing a new application for admission to the Tennessee Bar, and the Tennessee Supreme Court has directed the Board of Law Examiners to respond to plaintiff's inquiries about the re-application process. However, there is no indication that plaintiff has in fact reapplied for admission, and even if he has, it is not unlikely that his new application will garner a different response if not a different disposition, based on a variety of factors. Judge Sutton, writing for the Lawrence court on this issue, aptly described what we do not know in such circumstances:

> At this juncture, we do not know whether Lawrence will file another Bar application. If he does file a second application, we do not know what he will say in completing the application, how he will respond to questioning in the character and fitness hearing and whether the Board will grant or deny him admission. And if the Board opts to deny the second application, we do not know why it will do so. In the absence of concrete facts regarding the Board's affirmative or negative assessment of Lawrence's potential application, any resolution of Lawrence's claim - indeed even the assumption that Lawrence will be injured - is necessarily premature. ... In the end, while the ripeness doctrine may dovetail neatly with other doctrines (like *Rooker-Feldman*) that limit lower-federal-court review of state court decisions, that reality by itself gives us no warrant to sidestep the traditional ripeness requirements for bringing a claim in federal court.

Lawrence, 531 F.3d at 373-74 (internal citations omitted).

Although plaintiff has relied upon the Sixth Circuit's decision in Dubuc v. Michigan Bd. of Law Examiners, 342 F.3d 610 (6th Cir. 2003), to establish that his efforts to seek re-application defeat any argument as to ripeness, the undersigned finds Dubuc distinguishable from the case at bar. Ripeness was not a concern in Dubuc, as in that case the current, ongoing application of an allegedly unconstitutional bar admission rule in 2003 prevented Dubuc from reapplying for admission until 2005. There was thus no question of the immediacy of the harm asserted in that case. Moreover, unlike the case at bar, Dubuc

9

involved a general challenge to a bar admission rule that was allegedly unconstitutional on its face, in all instances in which it came into play. In the instant case, as in Lawrence, it is the uncertainty of the direction which the decisionmaking process will take within the "processes, procedures, rules and regulations employed in the determination of character and fitness" (Docket Entry No. 38 at 7, ¶ F) which drives the determination that the matter is not ripe for judicial review, and is therefore subject to dismissal.

B. Motion of the NCBE

Both Plaintiff's amended complaint and the parties' competing arguments in their motion papers devote considerable ink and energy to advancing their positions on whether NCBE is properly cast as a state actor for purposes of the § 1983 claim against it. However, for purposes of this Report and Recommendation, the undersigned assumes *arguendo* that the activities of NCBE in collecting criminal history information and tendering character and fitness reports based on such information to the Tennessee Board of Law Examiners qualify as state action under §1983. Even so, the amended complaint against NCBE is subject to dismissal for failure to state a claim upon which relief can be granted, as plaintiff has not plausibly alleged that NCBE's collection of records of dismissed moving violations and arrests, and its publication of that information to the Tennessee Board of Law Examiners, deprived him of any constitutional right.

Plaintiff alleges that NCBE "subjects applicants, and the Plaintiff, to a rigorous battery of questions and self-reporting . . . including questions that the Plaintiff alleges are unconstitutional." (Am. Compl., Docket Entry No. 38 at 2, ¶ 143) Plaintiff further clarifies that "[t]he challenged activity of Defendant NCBE [is] the alleged unconstitutional questions in the background investigation questionnaire promulgated to the Plaintiff[.]" Id. at ¶ 144.

10

In his original complaint, as incorporated into his amended complaint, plaintiff alleges that NCBE violated his Fourteenth Amendment right to due process by "[r]equesting information and disclosure regarding dismissed moving violations; [r]equesting information and disclosure regarding dismissed arrest[] records; [and] [p]reparing and tendering character and fitness reports/evaluations making use of, and considering, dismissed moving violations and dismissed arrest records[.]" (Docket Entry No. 1 at 26, ¶ 135)

However, for the sake of context, the undersigned would note that the U.S. Supreme Court has found that the public disclosure of an individual's arrest on a criminal charge which was not pressed beyond the initial arraignment and which was dismissed shortly after being publicly disclosed did not, in and of itself, pose any constitutional problem. Paul v. Davis, 424 U.S. 693 (1976). Merely asking questions about such charges, even with the knowledge that the individual in question would feel compelled to answer them and that such answers may negatively impact the individual's bar application, cannot be deemed to violate the due process rights of the applicant who was in fact, and as a matter of public record,[2] initially cited or arrested on such charges. Nor is it alleged that NCBE itself decided plaintiff's bar application based on records of moving violations or arrests which had been dismissed. Its role in enabling the Board of Law Examiners to make that decision, even if appropriately deemed to be state action, cannot be held to plausibly allege a constitutional violation redressible under § 1983.

Nor does plaintiff cite any authority to support the proposition that NCBE's

---

[2]See generally Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996); Herschel v. Dyra, 365 F.2d 17, 20 (7th Cir. 1966) (dismissing § 1983 claim based on allegedly wrongful retention of an arrest record after the underlying charges were dismissed).

11

activities violated his due process rights.  The case which plaintiff pleads as the lynchpin of his claim against NCBE, Schware v. Board of Bar Exam. of State of N.M., 353 U.S. 232 (1957), arose from an entirely different context and weighed the records of arrest on unprosecuted charges as one of several grounds for finding, on the facts of that case, that the ultimate decision denying admission to the New Mexico bar deprived the applicant of due process.  In Schware, the U.S. Supreme Court sat in direct review of the New Mexico Supreme Court's denial of Schware's bar application, framing the question before it as "whether the Supreme Court of New Mexico on the record before us could reasonably find that [Schware] had not shown good moral character."  353 U.S. at 239.  Upon reviewing for reasonableness the decision of the New Mexico Supreme Court -- which heavily relied upon Schware's prior membership in the Communist Party, in addition to his prior arrests on charges that were dismissed and his use of aliases -- the U.S. Supreme Court held as follows:

> In the light of petitioner's forceful showing of good  moral character, the evidence upon which the State relies-the arrests for offenses for which petitioner was neither tried nor convicted, the use of an assumed name may years ago, and membership in the Communist Party during the 1930's-cannot be said to raise substantial doubts about his present good moral character. There is no evidence in the record which rationally justifies a finding that Schware was morally unfit to practice law.
>
> On the record before us we hold that the State of New Mexico deprived petitioner of due process in denying him the opportunity to qualify for the practice of law.

Id. at 246-47.

Plaintiff relies on Schware to support his allegation of misconduct on NCBE's part in asking "unconstitutional questions."  With all due respect, the undersigned finds that the decision in Schware is simply too slender a reed upon which to rest plaintiff's § 1983

claim for a due process violation. It is thus concluded that the claims against NCBE are subject to dismissal.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that the motions to dismiss plaintiff's amended complaint (Docket Entry Nos. 39 and 41) be GRANTED and that this case be DISMISSED. It is further recommended that any appeal from this recommendation, if adopted by the Court, be certified as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 30th day of August, 2013.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE